## WINTERFELD *v.* SECOND AVE. R. Co.

*(Supreme Court, General Term, First Department.* November 18, 1892.)

HORSE RAILROADS—INJURY TO BOY ON TRACK.
  Where in an action for injuries sustained by being run over by a street car, the evidence shows no negligence on the part of the driver, but that plaintiff either fell down on the track, and had time to get out of the way, or that he ran into the horses attached to it, and that the driver tried to stop the car, the case was properly dismissed.

Appeal from special term, New York county.

Action by Minna Winterfeld against the Second Avenue Railroad Company to recover for injuries sustained by her son. Judgment for defendant. Plaintiff appeals. Affirmed.

Argued before VAN BRUNT, P. J., and O'BRIEN, J.

Benno Loewy, for appellant. *Merrill & Rogers, (Payson Merrill,* of counsel,) for respondent.

O'BRIEN, J. It is elementary law that, to entitle plaintiff to recover for injuries alleged to be due to the negligence of defendant, it must be affirmatively proved by the evidence of the plaintiff that such injuries resulted solely from the negligence of the defendant. This places upon the plaintiff the burden of showing, not only that the defendant was negligent, but that the plaintiff was free from contributory negligence. Where, therefore, the plaintiff presents no evidence tending to prove that the injuries resulted solely from the negligence of the defendant, or where it affirmatively appears that, though the defendant may have been guilty of negligence, still the plaintiff's negligence contributed to the injuries, it then becomes proper for the court to dismiss the complaint because of failure of proof sufficient to justify a recovery. Here the court dismissed the complaint upon the grounds that, in one view of the testimony given by the plaintiff, her boy was guilty of contributory negligence, and that in another view, based upon the testimony of another witness, "the driver made every effort that a man could make to stop the car," and hence there was no negligence on the part of the defendant. In determining whether this ruling was correct we will take the appellant's summary of the facts as proved. It was conceded "that the boy was run over by one wheel of one of the cars of the defendant, and that he thereby received injuries which necessitated the amputation of a leg, which followed." The plaintiff brought this action to recover for loss of services, and for expenses resulting from such injuries. From her testimony it appeared that she personally had no knowledge of how the accident occurred to her boy, who at that time was an infant, 10 years of age. Three witnesses were produced by plaintiff: One, the boy, who testified that just before the accident he was in the butcher shop on Second avenue, one door above 106th street, which was on the first floor of the house in which he lived. That a boy threw some dirt at him, and he ran across the street, and as he was running he slipped and fell. That before he fell he saw the light of the car, and that the car was then at the upper corner of 106th street. When he started to run, the car was somewhere below the corner. The car was coming fast. It was a little before 7 o'clock in the evening; not quite dark. It was then clear, although it had been raining previously. He was running across the street from the west to the east side when he fell down. That he looked down the street when

he started to run, and saw the car a little above the corner. That the horses were trotting. That he ran diagonally and across the street. That when he was hurt he was near the third elevated railroad post from the corner,—the one in the middle of the block, on the east side. That he was six or seven feet from the post when he fell,—just below it. That he fell on the track on the east side,—on the east rail. Both he and his mother testified that they had tried to find the two boys with whom he was then playing, but that they had moved away, and they were unable to find where they were. Herman Keppler testified that on the evening of this accident he was walking on the east side of Second avenue, and, seeing some friends on the other side, he started to cross the street. As he was crossing the street, when he got as far as the east track, he saw this boy fall. He fell right alongside of him. That he noticed at the time the boy fell that the Second avenue car was on the corner of 106th street. He did not stop to pick the boy up, but when he got as far as the other side of the avenue he heard a scream, and, rushing back, he got hold of the boy from under the car, and dragged him out, with the assistance of some friends. That they took the boy to a drug store. That they were obliged to shove the car back from the boy. That he did not see the driver. That when the boy fell he was in the middle of the block, and the car was at the upper corner of 106th street. That the horses were trotting. Elizabeth Christman testified that she lives on Second avenue, near 107th street. That on that evening she was in the butcher shop. When she got to the butcher's, she saw some boys playing tag from one side of the street to the other,—four or five boys,—and one of the boys ran right into her, and she gave him a shove. She then saw the car coming up, and she saw the little boy, August, right above the elevated post, playing tag with another boy, and that he ran right into the horses. She testified that she is a married woman, and that her husband is a tinsmith, and works for the Second Avenue Railroad Company now. On cross-examination she testified that she saw the driver, and that he had one hand on the brake and the other on the lines; and that she saw the driver, when the boy ran against the horses, put on the brakes "as fast as he could." That the driver "tried awful hard, but he could not stop after the boy fell." That when the boy fell she was on the opposite side of the street, on the sidewalk; and that the reason she is so positive that the driver tried "awful hard to stop" was "that there was so many boys running after the boy ran into her. That she looked right across the street, and saw it." This was all the testimony on the part of the plaintiff, and the court, on motion of the defendant's counsel, dismissed the complaint, on the ground that the evidence showed that the plaintiff was guilty of contributory negligence, and the plaintiff duly excepted.

Analyzing this testimony, with respect to the management of the car or the actions of the driver, no testimony whatever is given, apart from that of the boy, who says the car was coming fast; and of Keppler, that the horses were trotting; and of Elizabeth Christman, who alone testified to having seen the driver, with one hand on the brake and the other on the lines, who, "when the boy ran against the horses, put on the brakes as fast as he could." We are not, however, left entirely to speculation as to the rate at which the car was going. Keppler testified that when the boy fell he was beside him, so that he could touch him, and that thereafter he had plenty of time to, and did, cross over the track. From his evidence one of two inferences can be drawn: either that the boy that he saw fall was not the boy that was subsequently run over and injured by the car, or we must assume that the boy, in falling, became unconscious from the effects of the fall,—which, however, there is no evidence in the case to prove,—and then remained on the track while the car was coming the distance from the corner to the middle of the block between the streets. As to whether the boy whom the witness Keppler saw fall was the boy Winterfeld is rendered still

more uncertain when we come to consider the testimony of Elizabeth Christman, who, examined on behalf of the plaintiff, testified, as has been shown, that she saw the driver with one hand on the brake and the other on the lines, who, when the boy ran against the horses, put on the brakes as fast as he could. It will thus be seen that the inferences to be drawn tend to support the view that the plaintiff was guilty of contributory negligence, and there is no evidence in the case tending to support the theory that the injuries resulted solely from the negligent acts of the defendant. Of course, had there been evidence tending to show that when the boy fell he was rendered unconscious, and that the car was sufficiently far away to have enabled the driver to have seen and guarded against the accident, then a case would have been presented entitling the plaintiff to go to the jury, within the rule stated by Shear. & R. Neg. § 36, which was referred to with approval in *Mallard* v. *Railroad Co.*, (Com. Pl. N. Y ) 7 N. Y. Supp. 666, that "the plaintiff may recover, notwithstanding his own negligence exposed him to the risk of the injury, if the defendant, after becoming aware of the plaintiff's danger, failed to use ordinary care to avoid injuring him." Assuming, in the absence of evidence to the contrary, that the fall did not render the boy unconscious, and that the boy run over was the same one seen by the witness Keppler to fall, then no explanation is given for his not having got out of the way of the car; the evidence of this witness showing clearly that there was ample time between the fall and the passage of the car from the corner to where the boy fell within which he could have got upon his feet, and out of the reach of the car.

In the case of *Block* v. *Railroad Co.*, (Sup.) 9 N. Y. Supp. 164, relied upon by the appellant, it was said, (page 165:) "It may be further observed that this case, in its essential elements, is kindred to the case of *Fenton* v. *Railroad Co.*, Id. 162, (decided herewith;) the boy in that case being injured in consequence of falling in an attempt to cross the track under circumstances similar to those in this case." This *Case of Fenton* was taken upon appeal from this court to the court of appeals, and the opinion of this court affirming a judgment in favor of a recovery against the company was reversed. 26 N. E. Rep. 967. This necessarily affected the case of *Block* v. *Railroad Co.*, which the learned judge writing the opinion, as we have seen, stated to be in all essential elements kindred to the *Fenton Case*. It may be said, with respect to this case, that in all its essential elements it also is kindred to the case of *Fenton* v. *Railroad Co.*, which is a controlling authority upon this court. It was therein held "that the cars of street railways have a preference in the streets, and, while they must be managed with care, so as not to negligently injure persons in the streets, pedestrians must use reasonable caution to keep out of their way." In some respects the facts in that case were stronger in favor of sustaining a recovery than those presented here. It was proven in that case by a witness that he saw the boy look up and down the avenue, and start on a run to cross the tracks; that he saw him stumble and fall at the west rail of the track; that he attempted to get up, and before he could do so was struck by the horses, which were about 20 feet away from him when he fell; that he heard the hallooing of another witness to the driver; and that the brake was not applied until the horses struck the boy. Notwithstanding this evidence, which to some extent was offset by the defendant's witnesses, the judgment on the verdict of the jury was reversed, and a new trial granted, the opinion of the court concluding by stating that "the unfortunate death of this boy was due to his own carelessness, or it was a pure accident; and, in either event, the defendant cannot be held responsible for it." If the judgment in the *Fenton Case* could not be upheld, we fail to see how, in this case, where there is absence of any proof either of defendant's negligence or freedom from contributory negligence on the part of the plaintiff, a submission of the facts to the jury would be justi-

'fied. We are of opinion, therefore, that the court was correct in its ruling dismissing the complaint,.and that the judgment should be affirmed, with costs.

VAN BRUNT, P. J., concurs in result.